**FILED**
**U.S. District Court**
**District of Kansas**
07/22/2026

**Clerk, U.S. District Court**
By: SND Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DUSTIN J. MERRYFIELD,

     **Plaintiff,**

     v.                       **CASE NO. 26-3174-JWL**

JERRY MONTAGNE,  et al.,

     **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff Dustin J. Merryfield is hereby required to show good cause, in writing to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Complaint that are discussed herein.  Plaintiff is also given the opportunity to file an amended complaint to cure the deficiencies.

### 1.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is a civilly committed detainee under the Kansas Sexually Violent Predators Act ("SVPA"), K.S.A. §§ 59-29a01 to 29a022.  He generally resides in the inpatient housing at the Larned State Hospital in Larned, Kansas ("LSH") in the Kansas Sexual Predator Treatment Program ("SPTP").  The Court grants Plaintiff's motion for leave to proceed in forma pauperis (Doc. 3) and denies his motion to appoint the U.S. Marshal to serve summons and the complaint (Doc. 5) as premature.

Plaintiff's Complaint is based on the four (4) days he spent at the McPherson County Jail ("MCJ") from May 29 – June 1, 2026.  Plaintiff was sent there from LSH to appear in court for the annual review of his status as a sexually violent predator ("SVP").  He describes the nature of

1

his case by stating, "While in the County Jail Mr. Merryfield was mistreated and denied any and all rights with no purpose other than to humiliate and punish him.  There was no legitimate reason for the abuse he suffered." (Doc. 1, at 2.)  He includes the following specific allegations about his confinement at the MCJ:

- He was handcuffed for the trip from LSH to the MCJ.

- He had to remove his shoes, suit coat, dress shirt, and belt upon entering the MCJ.

- He was pat-searched.

- He was placed in a locked cell alone for about three hours.

- He was told to shower, then his clothing was taken and he was given a black and white striped jumpsuit identifying him as an MCJ inmate.

- He was taken to booking where his photo was taken.

- He was put in E Pod.  This is "the hole" at MCJ.  There is no phone access, no video visitation, and no games or television.  A camera monitors E Pod.  The shower is in the open and in view of the camera.

- The door of Plaintiff's E Pod cell, 106, was covered in an unknown black substance.

- The walls had paint missing and some exposed concrete block.

- There were several graffiti-type drawings on the walls, and a black substance was smeared in some areas.

- There were several wet, smelly towels at the base of the toilet.

- The temperature was very warm, and the vent was blocked by an unknown substance.

- The bed frame was dirty, and the toilet looked like it had not been cleaned in a while.

- The toilet was in view of anyone outside the cell and possibly the camera.

- The floor was missing paint, creating sharp edges and looking "horrible."

- He was not offered cleaning supplies.

- He was given one jumpsuit for the four days.

- He was issued three pairs of socks and three pairs of boxers.

- He was not given a shirt.

- He was given toothpaste, shampoo, a toothbrush, and a comb.  He was not given soap of any kind.

- He was given one towel and one washcloth.

- MCJ "withheld any and all incoming and outgoing telephone calls" from Plaintiff.

- He was taken to court wearing the jail jumpsuit in handcuffs and leg shackles.

- He was denied access to a licensed mental health professional for the four days.

- He missed his mandated treatment course on May 28 and June 1, 2026.

- He lost two hours of work on May 28, three hours of work on May 29, three hours of work on May 30, three hours of work on May 31, and three hours of work on June 1.

- He was placed in seclusion from 10:30 a.m. to 11:30 a.m., 3:30 p.m. to 5:00 p.m., and 11:00 p.m. to 8:30 a.m.

Based on these allegations, Plaintiff brings nine (9) counts for the violation of the following constitutional rights: (1) Due Process Clause of the Fourteenth Amendment; (2) right to freedom from restraint under the Fourteenth Amendment; (3) denial of liberty interest without due process in violation of the Fourteenth Amendment [same as (1)]; (4) denial of equal protection in violation of the Fourteenth Amendment; (5) subjection to cruel and unusual punishment in violation of the Eighth Amendment; (6) subjection to cruel and unusual punishment in violation of the Fourteenth Amendment; (7) denial of the right to freedom of association in violation of the Fourteenth Amendment; (8) denial of the right to treatment in violation of the Fourteenth Amendment; and

(9) "denial of the right to have the confinement bear reasonable relation to the purpose for which I am confined in violation of the Fourteenth Amendment." (Doc. 1, at 3.)

Plaintiff names as defendants: Jerry Montagne, Sheriff of McPherson County, Kansas; the Board of Commissioners of McPherson County; and Jane and John Does, unnamed officers of the McPherson County Jail. Plaintiff seeks total punitive and exemplary damages of $546,106.40, as well as injunctive and declaratory relief. (Doc. 1, at 17-18.)

## II. Statutory Screening of In Forma Pauperis Complaints

Where a plaintiff proceeds in forma pauperis, the Court is required to "dismiss the case at any time if the court determines that . . . (B) the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106,

4

1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S.

Ct. at 1974).

## III.  DISCUSSION

Plaintiff lists nine counts in his Complaint.  He then includes what he calls "supporting facts for all counts."  (Doc. 1, at 3.)  He offers no explanation of how he believes the facts demonstrate each asserted constitutional violation and thus fails to state a claim.  *See Nasious*, 492 F.3d at 1163.  The Court will not separately analyze each count because to do so would require the Court to "construct a legal theory on [Plaintiff's] behalf," which it is not authorized to do.  *See Whitney*, 113 F.3d at 1173-74.  However, the Court will offer some general observations about Plaintiff's complaints.

Plaintiff includes much discussion of how the conditions at MCJ differ from how he is treated at LSH and how the conditions at MCJ do not meet Kansas regulatory standards for the SPTP.  However, this is not the standard he must meet to bring an actionable § 1983 claim.  The violation of a state regulation does not state a constitutional violation unless the prison official's conduct "failed to conform to the constitutional standard."  *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (internal quotation marks omitted) (holding prisoner must establish that violation of a prison policy necessarily stated a constitutional violation). "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994) (citation omitted).  Plaintiff must show that his constitutional rights were violated. This is a much higher bar.

"Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo,* 457 U.S. 307, 321–22 (1982).  "But because of their dangerousness and the need to protect society, sexually violent predators are different in terms of treatment and

risk and may be subjected to different confinement conditions than other civilly committed individuals." *Chubb v. Sullivan*, 330 P.3d 423, 428–29 (Kan. App. 2014) (citing *see Merryfield v. State,* 241 P.3d 573 (2010)). Courts have "generally equated the conditions of their confinement with that of pretrial detention, rather than the less structured confinement of regular mental patients." *Id*. Those who are civilly committed retain "constitutionally protected interest in conditions of reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests" and, like pretrial detainees, may not be subjected to conditions that amount to "punishment" without due process. *Youngberg,* 457 U.S. at 320–21, 324.

However, these liberty interests are not absolute and must be balanced against the State's interests. *Id.* at 320. The Court must balance the interests of the civil committee and the State to insure there is minimal interference with the internal operations of the State's facility and must consider any decision by a professional of that facility to be "presumptively valid." *Baker v. Keck*, No. 6:14-cv-01356-JTM-KGG, 2017 WL 3026143, at *5 (D. Kan. July 17, 2017) (citing *Youngberg*, 457 U.S. at 323); *Burch*, 2010 WL 5391569, at *14 (also citing *Youngberg*). "[A] secure facility, whether it houses prisoners or dangerous civilly committed patients, has a legitimate interest in 'maintaining institutional security and preserving internal order and discipline,' which 'may require limitation or retraction' of the residents' retained constitutional rights." *Chubb*, 330 P.3d at 428-29 (quoting *Bell v. Wolfish,* 441 U.S. 520, 546 (1979); see also *Salerno v. Corzine,* No. 06–3547, 2013 WL 5505741, at *6 (D.N.J. 2013) (unpublished opinion) ("While courts of appeals have been reluctant to articulate a specific standard applicable to civilly committed individuals, they have found that restrictions are permissible so long as they advance the state's interest in security, order, and rehabilitation.")).

7

In order to establish a constitutional violation, Plaintiff must show that a condition was applied to punish him and that it was not reasonably related to a legitimate governmental objective. *Bell,* 441 U.S. at 536; s*ee also Merryfield v. Jordan,* 584 F.3d 923, 925–26 (10th Cir. 2009) (affirming district court's decision to dismiss SVP's complaint because "none of the privations of which he complained involved a fundamental right, and he alleged no facts indicating that any restrictions are not rationally related to a legitimate governmental objective or are irrational or arbitrary").  In determining whether the conditions of his confinement rise to the level of cruel and unusual punishment, the Court applies the same analysis applied to § 1983 claims alleging Eighth Amendment violations.  *Ledbetter v. City of Topeka,* 318 F.3d 1183, 1188 (10th Cir. 2003).  The conditions complained of must be "sufficiently serious" and must pose a "substantial risk of serious harm" to Plaintiff.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

As a starting point, the mere fact that Plaintiff was housed in a jail as a civilly committed SVP does not violate the Constitution.  In *Kelner v. Harvin*, No. 10-3127-SAC, 2011 WL 1559457, at *1–2 (D. Kan. Apr. 25, 2011), the plaintiff spent 190 days in the Ellis County Jail for trial under the Kansas SVPA.  He complained that he was housed in general population under the same conditions as criminal inmates, was not able to seek release on bond, and was not afforded the same treatment as already-committed SVPs.  The plaintiff argued that the "law is clearly established that the constitutional rights of a person who is civilly committed, or is being tried for civil commitment, are violated if they are placed in any jail or penal facility."

This Court rejected the plaintiff's argument, finding the detention of a pretrial detainee in a county jail to await civil commitment proceedings pursuant to the SVPA and the denial of bail to that detainee, standing alone, did not demonstrate a violation of due process or other federal constitutional rights.  *Id. (citing Atwood v. Vilsack,* 338 F. Supp. 2d 985, 997–98 (S. D. Iowa 2004),

8

based upon an SVP Act that is essentially the same as the one in Kansas*; see also Merryfield v. Kansas,* 2009 WL 3125470 (D. Kan. Sept. 25, 2009) (unpublished, cited for reasoning).

As for Plaintiff's complaints about specific conditions during transport and during confinement at the MCJ, the most relevant factors are the brief amount of time he was exposed to those conditions and the purpose of the detention location. The purpose of Plaintiff's transfer to the MCJ from Larned was to permit his participation in the judicial process, not to punish him. *See McKune v. Lile,* 536 U.S. 24 (2002) (transfer of prisoner from medium security facility to less-desirable maximum security unit, when not intended to punish prisoner, "is too ephemeral and insubstantial" to trigger Due Process protections) (quoting *Meachum v. Fano,* 427 U.S. 215, 228 (1976)).

Accepting Plaintiff's version of the facts, the deprivations in this case simply were not severe enough to rise to the level of constitutional violations in just four days. Not every hardship suffered as an SVP amounts to "punishment" in the constitutional sense. *See Bell*, 441 U.S. 537. "An inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered. *DeSpain v. Uphoff*, 264 F.3d 965, 973–74 (10th Cir. 2001) (quoting *Johnson v. Lewis,* 217 F.3d 726, 731 (9th Cir. 2000)). While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance. *Id.* Many courts have found that worse conditions than alleged by Plaintiff lasting for longer periods did not reach constitutional dimensions. *See Ajaj v. United States*, 293 F. App'x 575, 584 (10th Cir. 2008) (holding that a year-long deprivation of outdoor exercise did not violate the Eighth Amendment); *Alfred v. Bryant*, 378 F. App'x 977, 980 (11th Cir. 2010) (holding that requiring an inmate to sleep in a cell with a broken toilet and no mattress for eighteen days did not violate the Eighth

9

Amendment); *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997) (explaining that although prison authorities cannot indefinitely prevent an inmate from receiving exercise outside of his cell because of scheduling conflicts, constitutional rights were not violated where such a conflict occurred for only a few weeks); *Hightower v. Vose*, No. 95-2296, 1996 WL 516123, at *2 (1st Cir. Sept. 12, 1996) (holding that denial of shower for eight days amounted to a *de minimis* imposition and thus did not implicate constitutional concerns); *Saunders v. Raleigh Cty.*, No. 5:20-CV-00221, 2020 WL 9348328, at *16 (S.D. W. Va. May 18, 2020) ("To the extent Plaintiff complains of ... having no bed [and] having to sleep on the concrete floor, such does not constitute a constitutional violation because there is no allegation that Plaintiff suffered any specific injury nor was Plaintiff deprived of an identifiable human need."); *Tucker v. Wall*, No. CA 07-406 ML, 2010 WL 322155, at *10 (D.R.I. Jan. 27, 2010) (finding denial of showers and recreation for ten or fourteen days did not violate constitutional rights); *O'Mara v. Hillsborough Cty. Dep't of Corr.*, No. 08–cv–51–SM, 2008 WL 5077001, at *4 (D.N.H. Nov. 24, 2008) (holding that complaint of being denied exercise for thirty days does not state a constitutional claim); *Pressley v. Cannon*, No. 6:06-cv-2820-GRA, 2007 WL 3003182, at *2, 4-5 (D.S.C. Oct. 10, 2007) (finding the plaintiff's lack of mattress and sleeping on a concrete floor for almost five months did not rise to the level of a constitutional violation).

Given the legitimate purpose of his transfer to the MCJ and the brief duration of his confinement there, Plaintiff's allegations are not sufficient to establish a plausible claim for relief.

Furthermore, Plaintiff names the Sheriff of McPherson County and Jane and John Doe, unnamed officers of the MCJ, as defendants. Plaintiff has failed to allege how these defendants personally participated in the deprivation of his constitutional rights. An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or

inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983 liability). An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary

11

to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff alleges that Sheriff Montagne "personally directed his officers to carry out the actions complained of in this Petition." (Doc. 1, at 15.) This is no more than a conclusory allegation of involvement, which is not sufficient.

Plaintiff has also named the Board of Commissioners of McPherson County as a defendant. "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Wright v. City of Ponca City*, 2023 WL 5765848, at *7 (10th Cir. Sept. 7, 2023) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also id.* at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory.")). Instead, "the government as an entity" can only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id*. (quoting *Monell*, 436 U.S. at 694). To establish municipal liability a plaintiff must demonstrate the existence of a "municipal policy or custom." *Id*. (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)). Then the "plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'" *Id*. at n.9 (citing *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quoting *Bryson*, 627 F.3d at 788)).

"[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky*, 2022 WL 1421554, at *29 (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Only when a municipality's failure to train employees evidences a "'deliberate indifference' to the rights of inhabitants" can a failure to train be

12

considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389). To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.* (citation omitted).

However, this Court has recently held that a board of county commissioners is not a proper party to a suit based upon allegations of misconduct by jail deputies. *See Ponce v. Sedgwick Cty. Sheriff's Office*, 2025 WL 958256, at *7–8 (D. Kan. March 31, 2025) (finding that Kansas statutes give sheriffs, not county commissions, the authority to hire, train, and supervise deputies and operate a jail). Therefore, the Board of Commissioners of McPherson County is subject to dismissal.

## IV. Response and/or Amended Complaint Required

Plaintiff is required to show good cause why Plaintiff's claims should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (26-3174-JWL) at the top of the first page of

the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant. If Plaintiff does not file an amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's claims may be dismissed without further notice.

**IT IS THEREFORE ORDERED THAT** Plaintiff's motion for leave to proceed in forma pauperis (Doc. 3) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint marshal to serve summons and complaint (Doc. 5) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff is granted until **August 24, 2026,** in which to show good cause, in writing to the undersigned, why Plaintiff's Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **August 24, 2026**, in which to file a complete and proper amended complaint to cure all the deficiencies discussed herein.

14

**IT IS SO ORDERED**.

**Dated July 24, 2026, in Kansas City, Kansas.**

<u>**S/   John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**